**SCOTT et al. v. CURRIE et al.**

No. 2478.

Court of Civil Appeals of Texas. Eastland.

Dec. 8, 1944.

Rehearing Denied Dec. 29, 1944.

Doss & Overshiner, of Abilene, for appellants.

Wagstaff, Harwell, Douthit & Alvis, of Abilene, and Morrison & Morrison, of Big Spring, for appellees.

LESLIE, Chief Justice.

February 26, 1936, Mrs. M. L. Phillips purchased a section of land (66), paying therefor $8,441.16. There was an indebtedness against the land of $2,441.16, secured by a deed of trust in favor of a Federal Land Bank. She paid $6,000 of the consideration in cash and personally assumed the payment of the debt held by the Bank.

Thereafter, on December 14, 1938, she executed the will herein involved, and, without mentioning therein the above indebtedness, she devised in "Item Eighth" said section of land to plaintiffs, her nieces.

The controlling question presented by this appeal is whether said debt should be paid out of the assets of decedent's estate, or, do the plaintiffs take the land burdened with the debt?

The plaintiffs bring this suit seeking to have the estate discharge the encumbrance. In effect, the suit is one for the construction of the will. At least that is the major question, which is raised in a somewhat indirect manner. The executor and certain devisees under the will take the position that the testatrix made a specific devise of said land to plaintiffs and did not intend to give same to them free of the debt and lien.

The trial was before the court without a jury, and at the conclusion thereof judgment was rendered for the defendants, and plaintiffs appeal. The court filed findings of fact and conclusions of law, which are contested in all respects.

The plaintiffs, Mary Hardin Scott and Linnie Singleton, joined by their respective husbands, instituted this suit against the executor and beneficiaries under the will. Mrs. Phillips left a considerable estate, which was devised (1) to various relatives of herself and husband, (2) some to educational, religious and charitable institutions, and (3) persons engaged in such work.

Plaintiffs seek to have the executor pay the indebtedness against said section of land out of funds and assets then in his hands, but derived in the main from oil runs and royalties considered by him to belong to others as royalties from mineral rights specifically devised to them in the will. Plaintiffs do not ask that the devisees generally be required to contribute to the payment of such indebtedness, nor do they offer to contribute ratably to the same.

On the other hand, the defendants contend that Mrs. Phillips by her will specifically devised and bequeathed all of her property, except cash on hand, amounting to about $2,700, and stocks and bonds, of the probable value of $2,000, and in that connection, they also assert that the evidence is undisputed that the general course of administration, payment of taxes, general debts, etc., amounted to $7,200, and not only absorbed the cash, stocks and bonds, but exceeded the value of all such properties not specifically bequeathed by about $2,000.

Defendants, T. S. Curry, Executor, Hardin-Simmons University, Hendrick Memorial Hospital, Buckner Orphan's Home and East Fourth Street Baptist Church of Big Spring (here referred to as appellees), alleged that the devises and bequests to them were also specific, and that the executor did not have on hand any assets, not specifically devised, with which to pay the indebtedness against plaintiffs' land and had no right to use funds belonging to them for such purpose. These defendants further plead that if plaintiffs were entitled to any relief, which was denied, that it would be by way of contribution from all the parties who held testatrix's properties specifically devised and bequeathed in the will, and that plaintiffs had permitted the executor to turn over all the assets to such devisees, with the exception of the property belonging to the defendants just mentioned and embraced in Items 13 and 15 of the will.

In this connection, said defendants plead that in July, 1941, said plaintiffs accepted the land willed to them with the indebtedness against the same and with full knowledge of the terms of the will and had gone into possession and use of the land and continued to so occupy and use the same until the present time and had permitted the executor to deliver other unencumbered properties to other devisees, and, therefore, they (plaintiffs) were estopped to claim the right to have the indebtedness

:against their land paid off out of the assets so devised and bequeathed to others, if such right ever existed, which they denied.

The instant suit does not necessarily deal with the rights of creditors of an estate, and it is not believed that the construction of the will is in any way affected by the fact that no creditors are parties to the suit. The controversy is between persons (plaintiffs) alleged to have received a specific devise of land encumbered by a debt and lien, and other persons (defendants) who are alleged to have also received specific bequests and devises of unencumbered land, etc. from a common testatrix.

The respective litigants state the controlling issue, as they conceive it, as follows: Appellants say:

"The case really contains but one question, that is, whether or not under the terms of the will of Mrs. M. L. Phillips, the executor was required to pay the lien of the Federal Land Bank from other assets of the estate."

The appellees in their brief state the question thus:

"Where a testatrix disposes of her estate by specific devises and bequests and one specific devise is encumbered, can the devisees who get the encumbered property single out a part of the parties receiving specific devises and bequests and compel them to take their properties and pay off the indebtedness against that of the first parties mentioned?"

The idea of singling out "a part of the parties," etc., as stated by appellees is based on the alleged circumstance that the executor still has in his custody specific devises and bequests made in Items 13 and 15 to Hardin-Simmons University and other appellees and has money from royalties collected from oil or mineral rights specifically devised in said Item (13) to these particular defendants, whereas, devisees, other than Hardin-Simmons et al., have received from the executor such bequests and devises as were made to them and are not now being called upon by plaintiffs in this suit to contribute anything to the payment of said indebtedness against plaintiffs' land.

■ Of course the material inquiry always gets back to the question: What was the intention of the testatrix? Did she by her will intend that said section of land pass to the plaintiffs free, or exonerated from the indebtedness and lien held by the Land Bank? If such intention can be so ascertained, then it is the court's duty to effectuate the same.

In approaching the answer to the main question, we shall first determine the nature, whether general or specific, of the devises made in testatrix's will. Some portions of the will material in passing on the major issue, as well as this one, will be set forth.

In the first "Item" or paragraph of her will the testatrix enumerates the various properties owned by her, carefully giving a description of each, its location, etc. That "Item" concludes:

"I direct how title and possession of the same is to vest, or for such of it as I shall own at the time of decease."

She then proceeds by "Items" to make various bequests and devises, distributing her property to about 22 persons and institutions.

In "Item Eighth" of her will she devises said section 66 and the (southwest) quarter of section 59, block 19, T. & P. Ry. Co. Survey, Taylor County, Texas, to the plaintiffs, "Mary Hardin Scott and her sister, Lennie Singleton, daughters of my deceased brother, L. H. Hardin, in equal interests."

"Item Twelfth" is as follows:

"The bequests are absolute, in each instance, vestiture to enure to and be perpetuated through heirs, or successors and assigns. I own only one-half minerals or mineral rights, or equities in the minerals in the Glasscock County lands, and I reserve that for other bequests, so that devise of those lands, in each instance, is exclusive of and not inclusive of such minerals, mineral rights or royalties in minerals."

"Item Fifteenth" reads as follows:

"I direct that cattle comprising part of estate be sold and proceeds of sale or sales applied and used on and part of payments on salaries and for maintenance provided for, thus enlarging the funds that are to be distributed to the four purposes stated, under divisions of thirds and sixths, and direct same disposition of all my notes."

"Thirds" has reference to mineral rights and royalties devised to Hardin-Simmons University and Hendrick Memorial Hospital, as specified in "Item Thirteenth." "Sixths" has reference to like provision for the East Fourth Street Baptist Church in

Big Spring and to Buckner Orphan's Home, its maintenance, etc.

"Item Thirteenth" is as follows:

"One-half interest, undivided, in all oil, gas and other minerals, mineral rights and royalties in minerals in, under upon and that may be produced from the five sections and fractional sections of land in Glasscock County (part of the section 14 in said Glasscock County and part in Howard County) for benefits, purposes and uses, as follows: Semi-annual payment of $105.00 to or for salary of Carlos Stroberg, Missionary, now under direction of Dr. A. B. Deter, at Curityba, Brazil, and during period of ten years, next hereafter; $50.00, monthly, payments to East Fourth Street Baptist Church, in Big Spring, Texas, or to its Trustees for application to the Church's maintenance; $25.00 monthly payment to the Mexican Baptist Church, in said Big Spring, for Pastor's Salary, when needed, and for other .maintenance, when not needed for payment of, or payment on, salary of Pastor; one-third of balance, or proceeds of balance to Hardin-Simmons University; one-third to Hendrick Memorial Hospital for Crippled Children, both located in Abilene, Taylor County, Texas; One-sixth to East Fourth Street Baptist Church, in Big Spring, to be part of its gathering and appropriating to, cause of Missions and according to its method of division and distribution to such missions; One-sixth to Buckner Orphan's Home and to apply to maintenance of that great Institution, as its management shall order; bequest to Hardin-Simmons University is to be part of fund that is for maintenance of its Bible Department, and that to Hendrick Memorial Hospital is to be part of Hart Phillips Memorial Fund, applied to such maintenance. Each of the funds thus provided for is to be perpetual, only interest drawn upon and applied."

"Item Fifteenth" was first set out above and evidences testatrix's special desire and intention to enlarge "the funds that are to be distributed to the four purposes stated, under divisions of thirds and sixths;" and she directs same disposition of her notes and cattle.

 A careful study of this record and the foregoing will, in all its parts, leads us to the conclusion that plaintiffs and defendants each acquired the testatrix's property, or the part thereof devised to them, respectively, as specific devises

and bequests from her and that their rights herein should be adjudicated on that basis. Such bequests and devises as those under consideration meet the test laid down in the standard definition thereof in 69 C.J. p. 919, sec. 2085, as follows:

"A 'specific legacy' is a bequest of a particular thing, or specified part, of the testator's estate, which is so described as to be capable of identification from all others of the same kind. * * * Such a legacy can only be satisfied by a delivery to the legatee of the particular thing, .or things, bequeathed. * * * On the other hand, should there be a deficiency of the assets of the estate, a specific legacy will not be liable to abatement with the general legacies, except as a last resort for the creditors."

Or, as defined in Thompson on Wills, 2d Ed., p. 574, sec. 484, as follows:

"A specific devise is a gift of a part or all of the testator's real estate specifically and definitely described."

So much for the specific devises and bequests embraced in different items of the will. We pass now to the question of testamentary intention reflected by the will as it affects the payment of the debt against said section of land. Attention has already been called to the consideration paid by Mrs. Phillips for the section of land involved. Of the assumed indebtedness, about $1,964.77 remained unpaid at the date this suit was filed, and, as noted, the indebtedness is payable in semi-annual installments of $78.19.

Mrs. Phillips paid the installment falling due March 1, 1939. After her death the executor, Currie, paid out of the funds in his hands the installments due September 1, 1939, March 1, 1940, September 1, 1940, and March 1, 1941. Thereafter, the executor, concluding he had no funds on hand properly applicable to the payment of said indebtedness, refused to make further payments thereon. At this point the plaintiffs as devisees of the land stepped in and paid several of said subsequent installments including the one due March 1, 1943. These payments by the plaintiffs aggregated $309.39. Plaintiffs made these payments for the protection of their property and stated it to be their purpose to pay, if necessary, each remaining installment as it falls due, unless said executor is required to pay same as an obligation of the estate.

At this point it may be well to bear in mind that said executor, as well as co-defendants Hardin-Simmons et al., appellees, insist that the few installments paid by the executor, as well as some costs of general administration, etc., were made from oil runs and mineral royalties belonging to appellees Hardin-Simmons and others. That he made such payments under a misapprehension, and that he, in fact, had no funds from the testatrix's estate and especially from such sources (royalties, etc.) applicable to such indebtedness, and that such funds as he had paid on the same should be returned to said institutions.

This relief the court granted, but he found that the amount of such funds when so applied is insufficient to fully reimburse said institutions et al. for the sums so applied to said installments, expenses of general administration, etc.

As previously noted, testatrix purchased said land and on February 26, 1936, assumed the indebtedness and lien against it. Her will bears date of December 14, 1938. In addition to this assumption, making the debt her own personal obligation, there are certain characteristics reflected by the will:

She makes no provision in her will for the payment of the debt and lien against said section 66. Neither expressly nor by implication does she mention that indebtedness, although she assumed the same and knew of its existence at the date of her will and at her death. In fact, she personally paid one installment on the same.

In "Item Twelfth" of her will she states: "The bequests are absolute, in each instance, vestiture to enure to and be perpetuated through heirs, or successors and assigns * * *."

There is nothing in the will to indicate that the testatrix knew there was not enough property, not specifically devised and bequeathed, to pay all of her debts, expenses of administration, etc., and also extinguish the mortgage debt against section 66, or a substantial part thereof.

The appellants and appellees both proceed upon the theory that the will is plain and unambiguous in its terms. It will be so regarded in the disposition of this appeal.

In the light of the foregoing circumstances, we are of the opinion that the provisions of the will, under applicable rules of law, passed the title to said 1¼

sections of land to the plaintiffs free from the mortgage indebtedness against the same and which the testatrix assumed when she purchased said section 66.

As held in Kennard v. Kennard, 84 S.W. 2d 315, at page 321:

"The question is to be controlled by the intention of the testator as reflected by the will and aided, if necessary, by extraneous circumstances consistent therewith. 69 C. J. 976, 977; Page on Wills, § 1309, p. 2178."

To same effect is Stephens v. Dennis, 72 S.W.2d 630, 633 (writ ref.):

"In construing a will, the intention of the testator is a paramount consideration, and all its provisions must be looked to for the purpose of ascertaining the real intention of the maker. * * * any particular paragraph or provision of the will, which taken alone, would indicate a contrary intention, must yield to the intention manifested by the instrument as a whole. * * *

"In other words, a will is not to be construed by parts, but in its entirety, and as often said, the testator's intention is to be ascertained from everything within the four corners of the instrument."

The applicable rule of law is stated in Thompson on Wills, 2d Ed., page 575, sec. 484, as follows:

"In most jurisdictions, a specific devise of real estate which is subject to a mortgage or lien placed thereon by the testator or his ancestor will be exonerated from such mortgage or lien, unless there is an expressed intention in the will to the contrary. But this rule does not apply to cases where the testator or his ancestor purchased the real estate subject to the encumbrance, unless the testator or his ancestor has rendered himself personally liable therefor."

Obviously there is no such express intention to the contrary in Mrs. Phillip's will, and it is equally clear there is no implied intention therefrom that she intended that the plaintiffs should take the property burdened with said indebtedness.

The only reference in the will to any indebtedness of testatrix's estate is found in "Item Sixteenth," which is as follows:

"I want Mr. T. S. Currie * * * to be and I urge him to be Executor of my will and Trustee for management of properties and revenues, passing the gathering to beneficiaries for distribution by their

respective Trustees or constituted agencies, appropriating such reasonable per cent or portion of properties and funds coming under his direction as will be reasonable and fair compensation for his services, * * *."

While this provision does not seem to be applicable to debts generally, and apparently relates only to reasonable and fair compensation for the executor's services, nevertheless such provision for payment of that obligation, created by the will itself, was not confined to any particular character or piece of property or fund coming into the hands of the executor. In any event, there is nothing in said provision to warrant the conclusion that the testatrix intended that some of her debts should be paid by the estate generally and others by the devisees of particular parts of her property or estate.

Brown v. Baron, 162 Mass. 56, 37 N.E. 772, 773, 44 Am.St.Rep. 331, is in point. In that opinion it is said: "There is nothing in the will indicating an intention on the part of the testatrix that the devisees should pay the mortgage, or that any different course should be pursued in payment of that debt from that pursued in the payment of her other debts."

To the same effect is Bulkley v. Seymour, 74 Conn. 459, 51 A. 125, 126, 92 Am. St.Rep. 229:

"In construing a will the object of the court is to ascertain the actual intention of the testator, as expressed explicitly or impliedly, in and by the words of the will. In the case at bar the question is whether the testatrix has, in the way above indicated, manifested an intention that the devisees should take the land in question burdened with the mortgage debt. The devises here in question are simply conveyances of the land described, unburdened by any mortgage indebtedness or anything else, and nowhere in the will is there any indication of an intent to limit the gift to the mere value of the equity of redemption. The expressed intent, rather, is that the devisees shall have the full benefit of the described land. Here then, we have the case of a simple devise of land, which at the time it takes effect is subject to a mortgage to secure a debt of the testatrix. The rule in such cases is that the land passes to the devisees, exonerated from the mortgage debt, unless a contrary intention appears in the will. In other words, such a devise in such a will 'prima facie imports an intention that such debt shall be satisfied out of the general personal assets.' * * * (Citing several authorities.) And the same rule has been applied to a specific devise of personalty pledged for a debt. * * *

"The case at bar comes within this rule. The testatrix has devised land specifically, and it is subject to a mortgage created by her to secure her own debt; and she has made no provision whatever in her will for the payment of the debt, nor does she therein indicate any intention that it is to be paid by the devisees. These are the material facts in the case, and there is nothing in the other facts found that affects or changes them, or makes the above rule inapplicable to them. Applying that rule to the case, the will in question must be held to manifest an intent that the mortgage indebtedness resting upon the land specifically devised should be paid by the executor, as a debt of the testatrix, out of the personal assets of the estate."

Newsom v. Thornton, 82 Ala. 402, 8 So. 261, 264, 60 Am.St.Rep. 743, disposes of a case somewhat in point on the facts of the instant case and concludes with the statement of the rule, "The presumption of an intention that the devisee should take the lands, without such incumbrance * * * must prevail."

The above stated rule of law is well recognized in numerous authorities and texts. 28 R.C.L. p. 304, sec. 285, has the following:

"Apart from any express direction it is a general rule that where lands are devised subject to an incumbrance created by the decedent himself, the personal estate, since it constitutes the natural fund for the payment of all the decedent's debts and presumably has been increased by the consideration for which the incumbrance was given, is, in the absence of statute, primarily liable for the discharge of the incumbrance. Consequently the devisee, as a general thing, is entitled to have the realty exonerated by the discharge of the lien out of the personal estate. Accordingly a devise of land which is subject to a mortgage made by the testator may be construed as importing an intention that the debt be satisfied out of the general personal assets, even though the personal estate is insufficient to pay general legacies."

In the discussion of charges upon realty specifically devised, Thompson on Wills, 2d Ed., p. 593, sec. 504, says:

"In order to charge real estate specifically devised with the payment of debts and legacies the will must contain an express provision to that effect or the charge must be clearly and unmistakably implied from the whole will, read in the light of all the surrounding circumstances. Thus a charge may be expressly created by the use of the word 'charge,' or by the devise to one 'on condition that' he pay a certain debt or legacy."

In the instant case there is certainly no express provision in the will to the above effect, nor are there any facts and circumstances reflected by the will from which it can be unmistakably implied that the burden of the debt against plaintiffs' land was passed on to them.

Under the subject of Wills, 44 Tex.Jur. p. 855, sec. 278, we have the following:

"A debt which was owed to the testator by the taker of a specific devise will not be held to be a charge against the devise unless such appears to have been the testator's intention." Citing the Texas case of Russell v. Adams, Tex.Com.App., 299 S. W. 889, 894, from which we take the following believed to be substantially in point under the facts of the instant case:

"In closing, we think the rule with reference to specific devises is a salutary one. That rule simply provides that, where a piece of land is bequeathed specifically to a devisee, the testator intends that the land be taken by the beneficiary, regardless of whether or not that party pays any debt owing the general estate. The great weight of authority holds that the debt will not be a charge against a specific devise, unless it appears from an express provision of the will or from some necessary implication. The rule contended for in this case by plaintiff in error is that, where the will is silent about the paying of a debt, the latter should be held to be a charge upon a devise of realty. We do not think this should be the rule. Many people in preparing their wills might not understand that they had to exempt a specific devisee from the payment of his debt to the estate before he could receive his specific devise of realty."

■ In other words, while certain implications or inferences may be indulged in view of the instrument as a whole and in the light of attending circumstances, if any (44 T.J.P. 731), nevertheless, "* * * a devise, or charge on a devise, will not be implied unless it clearly appears to have been intended, and no implication will be made in controvention of the intention of the testator." Russell v. Adams, supra; Jackson v. Templin, Tex.Com.App., 66 S. W.2d 666, 92 A.L.R. 873. See also, Brown. v. Hopper, 8 Wash.2d 348, 112 P.2d 139.

■ The foregoing conclusions with reference to the meaning of the will in the respect under consideration are arrived at not only by the application of the principles of law set forth in the foregoing authorities, but also with due regard to the following fundamental principle pertaining to the disposition of estates of decedents and the statutory rules regulating the same, namely,

"A direction in the will that the executor pay all testator's just debts and funeral expenses adds nothing to the duty which the law imposes upon all executors." Thompson on Wills, p. 616, par. 533.

In substance the rule is stated in 44 Tex. Jur. 854:

"The property of the testator which passes to the devisees and legatees consists of that which remains after the payment of the expenses of administration, allowances and the debts of the testator. The law charges his debts against the testator's estate regardless of any provision of the will; nor in this respect is any added obligation imposed by the familiar clause declaring: 'I desire that all my just debts be paid,' etc."

■ Concerning the rights of creditors as against beneficiaries under a will, the law permits a testator to make most any disposition of his estate, which seems to him proper; nevertheless, it provides that he shall in no way so dispose of his property by will as to affect the rights of creditors of the estate to payment of their just claims before beneficiaries obtain anything. Thompson on Wills, supra, p. 621.

However, Article 3314, Vernon's Ann. Civ.St. is conclusive on such matters. It is there provided:

"When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will shall vest immediately in the devisees or legatees; and all the estate of such person, not devised or bequeathed, shall vest immediately in his heirs at law; subject however, to the payment of the debts of the testator * * * except such as may be exempted by law."

Since this is a suit for the construction of a will, we are of the opinion that the plaintiffs, the recipients of a specific devise, have a right to raise the questions here presented with reference to the construction of the will, and, as previously said, the suit is in no way affected by the fact that the creditors of the estate are not parties thereto, or parties plaintiff. The true meaning or interpretation of the will would be the same, whether viewed from the standpoint of devisees or creditors.

In the foregoing we have indicated that the testatrix disposed of all her property, real and personal, by specific devises, except cash on hand at her death and stocks and bonds. It appears that these stocks and bonds have not been sold and are still in the hands of the executor. It cannot be said that they represent any definite amount of cash applicable to any particular unpaid obligation of the estate. Such amount, whatever it turns out to be, is applicable to the payment of debts, including the debt against plaintiffs' land, and whatever amount thereof, if any, remains unpaid will be an obligation resting proportionately or ratably on all receiving said specific devises under her will.

This record is not in such condition as would warrant a rendition of the case in the above respects by this court. If we are correct in the disposition we make of this appeal, additional or amended pleadings will be advisable or necessary in the disposition of the case, and doubtless the testimony can and will be more fully developed, thereby reflecting clearly the executor's duties in paying the debts of the estate and winding up the same.

Certainly such debts and obligations, if any, including the debt and encumbrances on the plaintiffs' land, cannot and should not be wholly exacted from the properties devised to appellees Hardin-Simmons College et al., which property was specifically devised to them in Items "Thirteenth" and "Fifteenth" of the will. The income or royalty from that property partakes of the nature of its source. These devisees (appellees), together with other such devisees, including plaintiffs, should pay ratably the indebtedness against plaintiffs' lands and any other amount necessary to discharge any remaining obligations of the estate, or refund any sum paid on any legitimate obligation of the estate by the executor, but paid by him under misapprehension as to proper funds applicable thereto. 34 C.J.S. Executors and Administrators, § 500, p. 403; 24 C.J. p. 496, sec. 1334. The obligation due by those receiving specific legacies and devises is substantially stated in 3 Pomeroy's Equity Jurisprudence p. 2642, sec. 1137, as follows:

"Among legacies, the specific constitute the preferred class. Specific legacies do not abate in common with general legacies; they only abate if the deficiency of assets is so great as to render a resort to them necessary when the fund representing the general legacies is exhausted. Whenever it becomes necessary to resort to the class composed of the specific legacies and devises, all the legacies and devises in that class will abate pro rata. Specific legacies and devises stand upon the same footing, are subject to the same liability, are abated together under the same circumstances, and contribute ratably for the payment of debts and charges."

To the same effect is Thompson on Wills, p. 60, sec. 515:

"Devisees of the same class, like legatees of the same class, abate ratably. Specific legacies and specific devises stand upon the same footing, are subject to the same liabilities, are abated together with the same circumstances, and contribute ratably for the payment of debts and charges."

The appellants' points above discussed are sustained, and the judgment of the trial court is reversed and the cause remanded.